IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-01687-PAB-DW

VIESTI ASSOCIATES, INC.,

     Plaintiff,

v.

PEARSON EDUCATION, INC.,

     Defendant.

_____

**ORDER**

_____

This matter is before the Court on Defendant's Motion for Summary Judgment [Docket No. 100] filed by defendant Pearson Education, Inc. ("Pearson"). This Court has subject matter jurisdiction to decide this motion pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

Viesti Associates, Inc. ("Viesti") is a stock photograph agency based in Durango, Colorado that licenses photographs to publishers. Docket No. 109 at 5, ¶ 1. Pearson publishes educational textbooks and is incorporated in Delaware. Docket No. 96 at 2, ¶ 3. Between 1995 and 2010, Pearson was granted limited licenses to reproduce certain photographs (the "Pearson Photographs"). *Id.* at 6, ¶ 19; *see also* Docket Nos. 96-1, 96-2, 96-3, 96-4. Viesti's claims arise out of allegations that Viesti owns the copyright to these photographs and that Pearson exceeded the scope of its limited licenses. Docket No. 96 at 6, ¶ 20.

_____

[1]The following facts are undisputed unless otherwise indicated.

The Pearson Photographs consist of images authored by various photographers and which were licensed to Pearson by four entities.  Docket No. 96 at 2-3, ¶ 7.  The photographs listed in Exhibit A to the Second Amended Complaint were authored by Peter Bennett, Martha Cooper, Joseph Englander, Nadine Frank, Joe Gillespie, G. William Gleasner, Alan Kearney, Craig Lovell, Dan Peha, Kevin Vandivier, Joseph Viesti, and Robert Winslow (collectively, the "Exhibit A Photographers").[2]  *See* Docket No. 96-1.  Viesti licensed to Pearson the photographs listed in Exhibit A.  Docket No. 109 at 5, ¶ 2.  Daniel J. Cox, owner of Natural Exposures, Inc., authored the photographs listed in Exhibit B to the Second Amended Complaint.  *See* Docket No. 96-2.  Mr. Cox licensed to Pearson the photographs listed in Exhibit B.  Docket No. 109 at 7, ¶ 7.  Bryan and Cherry Alexander, owners of Arctic Photo, authored the photographs listed in  Exhibit C to the Second Amended Complaint.  *See* Docket No. 96-3.  Bryan and Cherry Alexander licensed to Pearson the photographs listed in Exhibit C.  Docket No. 109 at 8, ¶ 12.  Various photographers authored the photographs listed in Exhibit D to the Second Amended Complaint.  *See* Docket No. 96-4.  Art Directors & Trip Photo Library ("Trip"), owned by Helene Rogers and Robert Turner, licensed to Pearson the photographs listed in Exhibit D.[3]  Docket No. 109 at 10, ¶ 17.  Viesti did not author any

---

[2]Claudia Dhimitri is listed as authoring one photo in Exhibit A.  Docket No. 96-1 at 2.  Viesti fails to submit evidence of written agreements purporting to transfer ownership of that image from Ms. Dhimitri to Viesti or a declaration to that effect from Ms. Dhimitri herself.  As such, the Court finds no basis upon which to conclude that Viesti has standing to assert copyright infringement claims for Ms. Dhimitri's photograph and will dismiss Viesti's claim for copyright infringement that is based on Ms. Dhimitri's photograph.

[3]Several of the photographs listed in Exhibit D were authored by Helene Rogers and Robert Turner.  *See* Docket No. 96-4.  As to how Trip acquired the rights to the

of the Pearson Photographs.[4]  *See* Docket Nos. 96-1, 96-2, 96-3, and 96-4.  Viesti

claims that it acquired an ownership interest in the Pearson Photographs by virtue of

multiple written agreements between Viesti and the Exhibit A Photographers, Mr. Cox,

Bryan and Cherry Alexander, and Trip.

     Between 2009 and 2011, the Exhibit A Photographers, as well as Mr. Cox, Bryan

and Cherry Alexander, and Trip, each executed a Copyright Assignment and Accrued

Causes of Action Agreement (the "First Assignments") with Viesti.  *See generally*

Docket No. 100-7.  The First Assignments state:

> The undersigned photographer, the sole owner of the copyrights in the
> undersigned's images ("the Images") selected by Viesti Associates, Inc.
> ("Viesti") and now included in Viesti's collection, hereby grants to Viesti all
> copyrights and complete legal title in the Images.  Viesti agrees to reassign
> all copyrights and complete legal title back to the undersigned immediately
> upon resolution of infringement claims brought by Viesti relating to the
> Images.
>
> The undersigned agrees and fully transfers all right, title and interest in any
> accrued or later accrued claims, causes of action, choses in action – which
> is the personal right to bring a case – or lawsuits, brought to enforce
> copyrights in the Images, appointing and permitting Viesti to prosecute said
> accrued or later accrued claims, causes of actions, choses in action or
> lawsuits, as if it were the undersigned.

_____

remainder of the Exhibit D photographs, Mr. Viesti explains: "It is my understanding that
prior to the commencement of this action, the photographers who authored the
photographs identified in Exhibit D to the Second Amended Complaint transferred legal
or beneficial ownership of all pertinent copyrights to Trip by written assignments."
Docket No. 109-1 at 5, ¶ 18.  Viesti does not produce additional evidence of
agreements between Trip and the remaining Exhibit D photographers.

     [4]Exhibit A lists Joe Viesti as the creator of several photographs.  *See* Docket No.
94-1.  Mr. Viesti states that he executed agreements with Viesti Associates, Inc., which
Viesti argues transfer ownership of Mr. Viesti's photographs.  Docket No. 109-8 at 1-2.
The effect of these agreements is analyzed below.

*Id.* at 3.  With two exceptions,[5] the First Assignments contain identical terms.  The First

Assignment is silent as to which individual photographs it applies to; however, the

parties agree that the First Assignment was executed so that Viesti could pursue claims

against Houghton Mifflin Harcourt Publishing Company ("Houghton").  Docket No. 109,

at 6, 7, 9, 11, ¶¶ 5, 10, 15, 21.  Specifically, the photographers state, "I intended to

assign to Viesti copyrights and accrued causes of action for certain photographs in

---

[5]The language of the First Assignments is substantively similar with two
exceptions.  On February 26, 2009, Ms. Rogers and Mr. Turner, on behalf of Trip,
executed a First Assignment with the above-quoted language.  Docket No. 100-7 at 35.
However, on February 10, 2010, Mr. Turner executed a First Assignment that states:

> Art Directors & Trip Photo Library ("Art Directors") hereby grants to its
> representative and agent in the United States, Viesti Associates, Inc.
> ("Viesti"), all copyrights and complete legal title in the photographic images
> in its collection ("the Images"), including all interest in any claims, causes of
> action, or choses in action brought to enforce copyrights in the Images.
> Viesti agrees to reassign all copyrights and complete legal title in the Images
> back to Art Directors immediately upon resolution of infringement claims
> brought by Viesti relating to the Images.

Docket No. 100-7 at 33.

The First Assignment that relates to Mr. Viesti's photographs is between Viesti
Associates, Inc. and Viesti Collection, Inc., a now inactive stock photography agency
that Mr. Viesti claims had the right to license his photographs.  Docket No. 109-8 at 2,
¶ 9; *id.* at 9.  The agreement was executed by Viesti Collection, Inc. on February 13,
2009 and it states:

> In consideration of the mutual covenants, undertakings and promises set
> forth herein, and for other good and valuable consideration, receipt and
> sufficiency of which is expressly acknowledged, the parties agree as follows:
>
> 1.     The Viesti Collection, Inc. hereby grants, transfers and assigns to
> Viesti Associates, Inc. the complete legal title to, and all copyrights in, any
> and all photographic images created or owned by The Viesti Collection, Inc.
>
> 2.     The Viesti Collection, Inc. expressly grants, transfers and assigns to
> Viesti Associates, Inc. all right, title and interest in any accrued or later
> accrued claims, causes of action and choses in action related to the
> photographic images assigned herein, including claims for copyright
> infringements, past, present and future.

Docket No. 109-8 at 9.

order for Viesti to pursue claims related to those photographs against [Houghton]."

*See, e.g.*, Docket No. 109-13 at 2, ¶ 7.  The photographers also state that "[i]t was my

understanding that the First Assignment . . . would apply to the Pearson Photographs."

*Id.* at 2, ¶ 8.  Pearson disputes that the First Assignment was applicable to the Pearson

Photographs.  Viesti's litigation against Houghton involved three different cases; two of

them were closed on October 27, 2010.  Docket No. 100 at 9 n.3.

Between 1988 and 2010, the Exhibit A Photographers, Mr. Cox, Bryan and

Cherry Alexander, and Trip each executed a Photographers Non-Exclusive Agency

Agreement (the "Agency Agreements") with Viesti.  *See generally* Docket No. 100-2.

The Agency Agreements state, in relevant part:

> 1.  I, the undersigned certify and warrant that I am the sole and exclusive
> owner of all negatives, prints, positives, original color transparencies,
> duplicates, stories, motion picture films, text information, and other
> photographic materials delivered to you, now and in the future.  I appoint you
> as a non-exclusive Agent and representative in respect of the leasing and
> sale of said materials throughout the world.  All negotiations shall be at your
> discretion without prior consultation with me, except when outright purchase
> of originals is to be negotiated.
>
> 2.  The compensation for your services (VIESTI ASSOCIATES, INC.) (VA)
> shall be fifty percent (50%) of the total sum billed and collected by you for the
> duration of our working relationship . . . .
>
> 3.  In the event of . . . the unauthorized use of original color transparencies,
> negatives, prints, or motion pictures films by your client, I give you full and
> complete authority to make claims or institute suit, in your name if necessary,
> without further permission from me.

Docket No. 100-2 at 8.  The Agency Agreements further state that each agreement

shall run for five years with automatic renewal.  *Id.* at 10, ¶ 15.  The language of the

Agency Agreements executed by the Exhibit A Photographers, Mr. Cox, Bryan and

Cherry Alexander, and Trip is substantively similar.[6]

On December 3, 2010, Mr. Cox' representative emailed to Viesti a spreadsheet containing the photographs Mr. Cox licensed to Pearson.  Docket No. 134-7 at 2.  On January 17, 2011, Mr. Turner, on behalf of Trip, emailed to Viesti a similar spreadsheet. Docket No. 134-11 at 2.  On January 19, 2011, Cherry Alexander also emailed to Viesti a spreadsheet pertaining to the Pearson Photographs.  Docket No. 134-10 at 2.  Viesti claims that, by emailing Viesti a spreadsheet identifying specific photographs licensed to Pearson, Mr. Cox, Bryan and Cherry Alexander, and Trip assigned to Viesti copyrights in the Pearson Photographs.  Docket No. 109 at 7-11, ¶¶ 10, 15, 21. Pearson disputes that the act of emailing a spreadsheet was sufficient to transfer to Viesti any interest in the Pearson Photographs.

On June 28, 2011, Viesti filed this case, bringing claims against Pearson for copyright infringement, common law fraud, and fraudulent concealment.  Docket No. 1 at 8-10.  Viesti later dropped its claims for common law fraud and fraudulent concealment.  *See* Docket No. 63.

Between January and March 2012, the Exhibit A Photographers, Mr. Cox, Bryan and Cherry Alexander, and Trip each executed an Addendum to Copyright Assignment and Accrued Causes of Action Agreement (the "Addenda").  *See generally* Docket No. 100-13.  The Addenda state:

_____

[6]Some of the Agency Agreements make reference to "digital files," split licensing fees 60/40, and restrict Viesti's leasing and sale of photographs to the United States. *See, e.g.*, Docket No. 100-2 at 3, 71, 78.  The parties do not argue that the slight variation in the Agency Agreements' terms carries any significance in determining whether Viesti has standing to bring this action.

The undersigned previously assigned copyrights and accrued claims in the undersigned's images ("the Images") to Viesti Associates, Inc. ("Viesti"). Viesti agreed to reassign all copyrights and complete legal title back to the undersigned immediately upon resolution of infringement claims relating to the Images.

For avoidance of doubt, it was and is the intention of the undersigned to convey to Viesti, fully and without reservation, the copyrights and claims so that Viesti has legal standing to enforce copyrights in the Images.  If any provision of the previous assignment is deemed to be inconsistent with Viesti's standing to bring claims, such provision is void and shall have no effect.

*Id.* at 3.

Pearson filed a Motion to Dismiss, arguing that Viesti lacked standing to sue for copyright infringement.  Docket No. 70.  On March 26, 2013, the Court denied Pearson's Motion to Dismiss, refusing to consider documents attached to Pearson's motion, but granting Pearson leave to file a motion for summary judgment on the issue of standing.  Docket No. 92.  The Court directed Viesti to file an amended complaint identifying each photograph with the document assigning Viesti the exclusive right of ownership to the particular photograph and the date of such assignment.  *Id.* at 9.

In March 2013, the Exhibit A Photographers, Mr. Cox, Bryan and Cherry Alexander, and Trip each executed a Copyright and Accrued Causes of Action Assignment ("Third Assignments").  Docket No. 100-15.  The Third Assignments purport to assign "Viesti co-ownership of the copyrights in the Images not previously assigned to Viesti [and] copyrights in the Images previously assigned to Viesti." *Id.* at 3.  The Third Assignments also state: "Viesti agrees to reassign all copyrights back to Photographer upon resolution of claims brought by Viesti relating to the Images." *Id.* Around the time the Third Assignments were executed, the Exhibit A Photographers,

Mr. Cox, Bryan and Cherry Alexander, and Trip each signed declarations (the "declarations"). *See, e.g.*, Docket No. 109-13 at 1. The declarations state, in identical language, that the declarants' intention "was and is to transfer the necessary copyrights and claims to Viesti, give Viesti licensing rights . . . , and give Viesti legal standing to bring copyright infringement claims." *See, e.g.*, *id.* at 2, ¶ 9. With the exception of Mr. Viesti's declaration [Docket No. 109-8], the declarations' language varies only as to the date each declarant executed agreements at issue. *Cf.* Docket No. 109-14.

On April 16, 2013, Viesti filed a Second Amended Complaint. Docket No. 96. In addition to attaching Exhibits A, B, C, and D listing each photograph by copyright registration number and photographer, Viesti attached the declarations, the First Assignments, Agency Agreements, Addenda, and Third Assignments executed by Viesti and the Exhibit A Photographers, Mr. Cox, Bryan and Cherry Alexander, and Trip. *See* Docket Nos. 96-1 through 96-17. Viesti's Second Amended Complaint does not otherwise identify each photograph with date of assignment or the document assigning Viesti the exclusive right of ownership to the particular photograph.

On May 20, 2013, Pearson filed a Motion for Summary Judgment on the issue of standing [Docket No. 100], which is the motion now before the Court. Pearson claims that Viesti lacks standing for several reasons. First, Pearson argues that the First Assignments pertained only to photographs licensed to Houghton and not to the Pearson Photographs. Docket No. 100 at 9. Second, Pearson argues that the Addenda and Third Assignments were executed after this case was filed and, as such, are insufficient to confer standing on Viesti. *Id.* at 10. Third, Pearson argues that the Agency Agreements only transferred to Viesti a non-exclusive right to license

8

photographs.  *Id.* at 14.  Viesti responds that the various agreements transferred to

Viesti beneficial co-ownership of copyrights to the Pearson Photographs.  Docket No.

109 at 14.  Viesti also argues that the various agreements assigned to Viesti all accrued

causes of action with respect to the Pearson Photographs, giving Viesti standing to

bring infringement claims that arose prior to the execution of the various agreements.

*Id.* at 17.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if

under the relevant substantive law it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary

judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An

issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a

verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.

1997).

However, "[w]hen, as in this case, the moving party does not bear the ultimate

burden of persuasion at trial, it may satisfy its burden at the summary judgment stage

by identifying a lack of evidence for the nonmovant on an essential element of the

nonmovant's claim."  *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th

Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998))

(internal quotation marks omitted).  "To prevail at summary judgment on standing

grounds, the defendant must show that the record is devoid of evidence raising a

genuine issue of material fact that would support the plaintiff's ultimate burden of

proving standing."  *Day v. Bond*, 500 F.3d 1127, 1132 (10th Cir. 2007).  "Once the

moving party meets this burden, the burden shifts to the nonmoving party to

demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo.,*

*Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 325 (1986)).  The nonmoving party may not rest solely on the

allegations in the pleadings, but instead must designate "specific facts showing that

there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).

"To avoid summary judgment, the nonmovant must establish, at a minimum, an

inference of the presence of each element essential to the case." *Bausman,* 252 F.3d

at 1115 (citing *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994)).  "In applying

this standard, we view all facts and any reasonable inferences that might be drawn from

them in the light most favorable to the nonmoving party." *Henderson v. Inter-Chem*

*Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

Where, as here, the issue of standing is raised on a motion for summary

judgment, "to prevail on such a motion 'a plaintiff must establish that there exists no

genuine issue of material facts as to justiciability.'" *Essence, Inc. v. City of Federal*

*Heights*, 285 F.3d 1272, 1280 (10th Cir. 2002) (quoting *Dep't of Commerce v. U.S.*

*House of Representatives*, 525 U.S. 316, 329 (1999)).  Plaintiff must support its

allegations "with the manner and degree of evidence required at the [summary

judgment] stage[] of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

(1992).

## III.  ANALYSIS

### A.  The Copyright Act

Under the Copyright Act of 1976, Congress granted copyright owners the specific

and exclusive rights:

> (1) to reproduce the copyrighted work in copies or phonorecords;

> (2) to prepare derivative works based upon the copyrighted work;

> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106.  The list of exclusive rights is exhaustive – "[i]f a right is not 'specified,'

then it is not one of the exclusive rights granted by Congress." *Silvers v. Sony Pictures*

*Entm't, Inc.*, 402 F.3d 881, 886-87 (9th Cir. 2005).  However, "exclusive rights may be

chopped up and owned separately, and each separate owner of a subdivided exclusive

right may sue to enforce that owned portion of an exclusive right, no matter how small."

*Id.*

Section 501(b) of the Act defines under what circumstances copyright owners have standing to bring a suit against infringing parties.  For a plaintiff to assert a claim for copyright infringement, it must be (1) the "legal or beneficial owner of an exclusive right under a copyright" and (2) entitled "to institute an action for any infringement of that particular right committed while he or she is the owner of it."  17 U.S.C. § 501(b).[7] Although the Tenth Circuit has not decided this specific issue, the weight of authority interprets § 501(b) as authorizing suit *only* by legal or beneficial owners.  *See HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 381 (7th Cir. 2011) ("the Copyright Act spells out who has enforceable rights under the statute; someone who does may sue, and someone who does not has failed to state a claim upon which relief may be granted"); *see also Silvers*, 402 F.3d at 885 ("Congress' explicit listing of who *may* sue for copyright infringement should be understood as an *exclusion of others* from suing for infringement." (emphasis original)); *Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 938 (7th Cir. 1993) (prohibiting licensing agent from joining copyright infringement suit pursuant to § 501(b)).

Legal owners are those with legal title to at least one exclusive right.  *Silvers*, 402 F.3d at 886.  Beneficial owners are those without legal title, but with an interest in

---

[7]Any copyright owner bringing suit is subject to the requirements of § 411, which provides, among other things, that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a).  In *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010),  the Supreme Court held that § 411(a) imposed a non-jurisdictional precondition – copyright registration – that plaintiffs ordinarily must satisfy before filing copyright infringement claims.  *Id*. at 157.  Pearson has filed a Motion for Summary Judgment [Docket No. 116] challenging Viesti's compliance with the registration requirement.

royalties or licensing fees flowing from an exclusive right.  *Id.*; *see also Moran v. London Records, Ltd.*, 827 F.2d 180, 183 (7th Cir. 1987) (defining beneficial owner as one who has "the right to receive royalties from the copyright's exploitation") (citations and quotations omitted).  In order to bring a claim, both legal and beneficial owners must show that they are the owners of at least one exclusive right set forth in § 106.  *Hyperquest*, 632 F.3d at 382.  Conversely, the holder of a nonexclusive license has no standing to bring an infringement claim.  *Id.*; *see also Granite Music Corp. v. Center St. Smoke House, Inc.*, 786 F. Supp. 2d 716, 724 (W.D.N.Y. 2011) ("A non-exclusive licensee does not have standing to commence a copyright infringement action."); *Swarovski Am. Ltd. v. Silver Deer Ltd.*, 537 F. Supp. 1201, 1204 (D. Colo. 1982) (same).

Where a plaintiff's only legal interest in a copyright is the right to bring an accrued claim, courts have strictly applied the standing requirements set forth in § 501(b).  "The right to sue for an accrued claim for infringement is not an exclusive right under § 106."  *Silvers*, 402 F.3d at 884.  Therefore, "[t]he bare assignment of an accrued cause of action" does not meet the standing requirement of § 501(b).  *Id.* at 890.  One rationale for the strict application of § 501(b), adopted in both the Second and Ninth Circuits, is that "the Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf."  *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991); *see also Silvers*, 402 F.3d at 890 (citing *ABKCO*).[8]

---

[8]In resolving this motion, the Court need not decide under what circumstances, if any, the assignment of accrued claims is permissible.  The Tenth Circuit has not

Because Pearson challenges Viesti's standing to bring claims related to the Pearson Photographs, the primary question before the Court is whether the agreements between Viesti and the Exhibit A Photographers, Mr. Cox, Bryan and Cherry Alexander, and Trip transferred to Viesti legal or beneficial ownership of one of the exclusive rights contemplated by § 106.[9]

## B.  Challenges to Standing Pursuant to § 501(b)

Viesti argues that Pearson should not be permitted to challenge the assignments between Viesti and the Exhibit A Photographers, Mr. Cox, Bryan and Cherry Alexander, and Trip.  Docket No. 109 at 20.  Viesti cites to *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27 (2d Cir. 1982), *superseded by statute on other grounds*, 15 U.S.C. § 1125(a), for the proposition that, where a copyright holder and licensee have no dispute over the formality of an assignment, "it would be anomalous to permit a third party infringer to invoke this provision against the licensee."  *Id.* at 36.  However, the Second Circuit's holding in *Eden Toys* was limited to the issue of whether

decided this question; however, the Second and Ninth Circuits have held that the transferee of accrued claims may bring an infringement action provided the transferee is an owner of "*both* the copyright *and* [the] accrued claims."  *Silvers*, 402 F.3d at 890 (citing *ABKCO*, 944 F.2d at 980).  Under those circumstances, accrued claims may only be assigned if expressly included in the assignment.  *ABKCO*, 944 F.2d at 980.

[9]As noted above, Viesti was directed to file a Second Amended Complaint identifying each photograph with the document assigning Viesti the exclusive right of ownership to the particular photograph and the date of such assignment.  Viesti did not comply with this request.  Rather, Viesti appears to argue that any single agreement, and/or the various agreements collectively, had the effect of transferring to Viesti the necessary rights to the Pearson Photographs.  Viesti is similarly vague as to dates upon which these transfers were accomplished.  Thus, where Viesti does not indicate the specific document and date that pertain to the transfer of each Pearson Photograph, the Court must analyze the effect of all of the various agreements to which Viesti refers.

the copyright owner and defendant engaged in the necessary procedural formalities under 17 U.S.C. § 204(a).  The Second Circuit remanded to the district court for a determination of whether the copyright owner actually conveyed an exclusive license. *Id.* at 36-37; *see also Minden Pictures, Inc. v. Pearson Educ., Inc.*, 929 F. Supp. 2d 962, 970 (N.D. Cal. 2013) (rejecting argument that defendant cannot challenge the validity of copyright assignments between plaintiff and copyright owner).  Moreover, the Court "must raise the standing issue *sua sponte*, if necessary, in order to determine if it has jurisdiction."  *United States v. Colo. Supreme Ct.*, 87 F.3d 1161, 1166 (10th Cir. 1996) (citing *Orr v. Orr*, 440 U.S. 268, 271 (1979)).  Accordingly it is proper for the Court to consider Pearson's arguments on the issue of standing.

### C.  Contract Interpretation

The Court turns to the interpretation of the various agreements.  *See Nafal v. Carter*, 540 F. Supp. 2d 1128, 1140-41 (C.D. Cal. 2007) ("the Court must examine the interstices of the various agreements, and consider their combined effect").  "It is the substance of the agreement, not the labels that it uses, that controls our analysis." *HyperQuest*, 632 F.3d at 383.  When construing copyright agreements, traditional rules of contract interpretation apply.  *Kennedy v. National Juvenile Detention Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999) (applying Wisconsin law to construe copyright agreement); *see also SCO Group, Inc. v. Novell, Inc.*, 578 F.3d 1201, 1209-10 (10th Cir. 2009) (applying California law and holding that agreements transferring copyrights must be read as a whole); *Righthaven LLC v. Wolf*, 813 F. Supp. 2d 1265, 1272 n.6 (D. Colo. 2011) (applying Colorado law).  Pearson's brief indicates that Colorado law

15

controls the interpretation of the agreements in this case [Docket No. 100 at 12], while

Viesti's briefs are silent on the issue.  Finding no compelling reason to apply the law of

another state, the Court will apply Colorado law in interpreting the agreements at

issue.[10]

Under Colorado law, "[i]nterpretation of a written contract is a question of law for

the court."  *In re Marriage of Thomason,* 802 P.2d 1189, 1190 (Colo. App. 1990) (citing

*Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo. 1984)).  The primary goal

of contract construction is to determine and effectuate the intent and reasonable

expectations of the parties.  *Copper Mountain Inc. v. Industrial Sys., Inc.,* 208 P.3d 692,

---

[10]The First Assignments, the Addenda, and the Third Assignments do not contain a choice of law provision.  Viesti is currently based in Colorado, appears to be the party responsible for drafting the agreements, and the relationship between the parties appears to be centered in Colorado; thus, where Viesti is silent on the issue, the Court concurs with Pearson's assessment that Colorado law applies to the First Assignments, Addenda, and Third Assignments.  *See In re AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509 (Colo. 2007) (holding that, under Colorado's choice of law analysis, the state with the most significant relationship to the occurrence and the parties for any particular issue supplies the relevant substantive law).

The Agency Agreements present a slightly different issue.  The vast majority of the Agency Agreements contain a choice of law provision indicating that Colorado law applies.  *See, e.g.*, Docket No. 100-2 at 11, 31, 36, 41, 46, 51, 55, 59, 64, 68, 73.  Two Agency Agreements contain a "United States" choice of law provision [*id.* at 77, 80] and the Court finds that the application of Colorado law to those Agency Agreements is appropriate.  Three Agency Agreements contain a Texas choice of law provision [*id.* at 5, 15, 25], and one contains a New York choice of law provision [*id.* at 20].  However, where neither party advocates for the application of Texas or New York law and where neither party argues that the application of Texas or New York law would alter the result, the Court finds that Texas, New York, and Colorado law on contract interpretation is sufficiently similar to merit the application of Colorado law to all Agency Agreements.  *See Balandran v. Safeco Ins. Co. of Am.*, 972 S.W. 2d 738, 741 (Tex. 1998) ("Our primary goal, therefore, is to give effect to the written expression of the parties' intent."); *Evans v. Famous Music Corp.*, 807 N.E. 2d 869, 872 (N.Y. 2004) ("our role in interpreting a contract is to ascertain the intention of the parties . . . from the plain meaning of the language of the contract").

697 (Colo. 2009).   Contract language must be examined and construed consistently with the plain and generally accepted meaning of the words employed.  *Id.*; *see Pepcol Mfg. Co.,* 687 P.2d at 1313-14 ("In the absence of contrary manifestation of intent in the contract itself, contractual terms that have a generally prevailing meaning will be interpreted according to that meaning.").  "The court should interpret a contract in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless."  *Copper Mountain, Inc.*, 208 P.3d at 697 (internal quotation marks omitted).  "Extraneous evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract."  *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997); *see also Pepcol Mfg. Co.*, 687 P.2d at 1314 ("It is axiomatic that in the absence of an ambiguity a written contract cannot be varied by extrinsic evidence.").

Ambiguity is also decided as a question of law.  *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2005).  "A contract is ambiguous when it is reasonably susceptible to more than one meaning." *Public Serv. Co. of Colo. v. Meadow Island Ditch Co. No. 2*, 132 P.3d 333, 339 (Colo. 2006).  Much like standard contract interpretation, "[i]n determining whether a provision in a contract is ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meanings of the words used, and reference must be made to all the agreement's provisions*." Lake Durango Water Co., Inc. v. Public Utilities Comm'n*, 67 P.3d 12, 20 (Colo. 2003).  Because "courts no longer apply a rigid 'four corners' rule . . . extrinsic evidence may be conditionally admitted to determine

17

whether the contract is ambiguous." *East Ridge of Fort Collins*, 109 P.3d at 974

(citation omitted).  "A mere disagreement between the parties as to the interpretation of

an agreement does not in itself create an ambiguity as a matter of law."  *City of Aurora*

*v. ACJ P'ship*, 209 P.3d 1076, 1085 (Colo. 2009).

### 1. First Assignments

Viesti argues that the First Assignments transferred to Viesti "copyrights in the

photographs."  Docket No. 109 at 18.  With the exception of the First Assignment

purportedly pertaining to Mr. Viesti's photographs and one of the First Assignments

signed by Mr. Turner,[11] the First Assignments state, in relevant part:

> The undersigned photographer, the sole owner of the copyrights in the
> undersigned's images ("the Images") selected by Viesti Associates, Inc.
> ("Viesti") and now included in Viesti's collection, hereby grants to Viesti all
> copyrights and complete legal title in the Images.  Viesti agrees to reassign
> all copyrights and complete legal title back to the undersigned immediately
> upon resolution of infringement claims brought by Viesti relating to the
> Images.

Docket No. 100-7 at 3.

There are several problems with Viesti's argument that the First Assignments

transferred to Viesti an ownership interest in the Pearson Photographs.  First, it is

undisputed that the "Images" referenced in the First Assignments were images that

were at issue in the actions against Houghton.  Docket No. 109, at 6, 7, 9, 11, ¶¶ 5, 10,

15, 21.  Viesti provides no evidence upon which to conclude that the images at issue in

---

[11]The effect of the assignment pertaining to Mr. Viesti's photographs is analyzed
below.  With respect to Trip, neither party argues that the slightly different language
changes the meaning of the First Assignment and the Court finds that the language is
not substantively different from the language of the First Assignment signed by the
other photographers in this case.  *Cf.* Docket No. 100-7 at 35.

the Houghton action are the same images at issue in this case and the First

Assignments do not explicitly contemplate the possibility that the agreements will apply

to additional images.  *Cf.* Docket No. 109-3 at 5, ¶ 1 ("I am the sole and exclusive

owner of . . . photographic materials delivered to you, now and in the future").  Second,

Viesti does not dispute that its actions against Houghton concluded on October 27,

2010,  Docket No. 100 at 9 n.3, whereupon Pearson argues that the First Assignments

required Viesti to immediately "reassign all copyrights and complete legal title" back to

the photographers.  *See* Docket No. 100-7 at 3.  Viesti fails to respond to Pearson's

argument on this point.[12]  As a result, it is not evident that Viesti retained any rights in

the photographers' images after the Houghton actions came to a close.[13]

-------------------

[12]After the Houghton actions concluded, Peter Bennett executed a First
Assignment on March 3, 2011 and Joe Gillespie executed a First Assignment on March
3, 2011.  *See* Docket No. 100-7 at 3, 11.  Viesti does not explain the effect of these
assignments.  Nonetheless, both Mr. Bennett and Mr. Gillespie state that, at the time of
the First Assignment, each intended to assign to Viesti the rights necessary to pursue
claims against Houghton.  *See* Docket No. 109-13 at 2, ¶ 7; Docket No. 109-7 at 2, ¶ 7.

[13]The First Assignment between Viesti Collection, Inc. and Viesti Associates,
Inc., unlike the other agreements, does not contain a reassignment provision.  Viesti
fails to meet its burden of showing that the Viesti Collection, Inc. First Assignment
transfers any interest in the Pearson Photographs; thus, the lack of a reassignment
provision is not dispositive.  Addtionally, Viesti fails to produce evidence of an
agreement or otherwise explain when, how, and what specific rights Viesti Collection,
Inc. acquired in Mr. Viesti's photographs.  Mr. Viesti states that his photographs
became part of the collections of Viesti Associates, Inc. and Viesti Collection, Inc. and
that both entities licensed the images, but a grant of licensing rights is not the
equivalent of transfer of legal or beneficial ownership.  Docket No. 109-8 at 1-3, ¶¶ 2, 9,
10; *see also HyperQuest*, 632 F.3d at 382 ("[an entity] holding a non-exclusive license
is not entitled to complain about any alleged infringement of the copyright").  Because
Viesti has the burden to show that it has standing, it is not incumbent upon the Court to
guess or speculate as to when or how Viesti Collection, Inc. acquired the necessary
rights to Mr. Viesti's photographs and, accordingly, whether Viesti Collection, Inc.
possessed the necessary rights to transfer to Viesti Associates, Inc.

19

Viesti's theory as to how and when the First Assignments became applicable to the Pearson Photographs is unclear.  Viesti relies on the photographers' declarations, which contain contradictory statements:

> 7.   At the time of the First Assignment, I intended to assign to Viesti copyrights and accrued causes of action for certain photographs in order for Viesti to pursue claims related to those photographs against Houghton Mifflin Harcourt Publishing Company.

> 8.   It was my understanding that the First Assignment and the Agency Agreement would apply to the Pearson Photographs, and that new assignments were not necessary for Viesti to pursue different claims related to the Pearson Photographs.

*See, e.g.*, Docket No. 109-13 at 2, ¶¶ 7-8.  Viesti does not explain when and how the photographers' understanding as to the meaning of the First Assignment changed.  At his November 12, 2012 deposition, Mr. Viesti stated:

> [B]y the time we had concluded with HMH and a few months, some months after that, we realized there may be other actions . . . [t]hen we said to the photographers, "Well, we can assign the copyrights back to you now, if you want us to.  If we have another action later on you'll need to sign the form again.  Of shall we just leave it until we finish whatever we're dealing with here?"

> And everybody said, "Just keep those copyrights until everything's resolved now."

Docket No. 100-3 at 10, p. 251:6-17.  Apart from Mr. Viesti's testimony, Viesti produces no evidence indicating the existence of subsequent oral agreements between Viesti and the photographers and no evidence indicating whether such oral agreements were reached prior to, or during, this litigation.  To the contrary, when asked at his deposition on May 21, 2013 when he first heard of this action against Pearson, Mr. Peha stated: "About one month ago."  Docket No. 134-4 at 3, p. 32:12.  Even assuming that such agreements exist, Viesti fails to show that oral agreements modifying the First

20

Assignment would be effective. *See* 17 U.S.C. § 204(a) (stating that transfers of copyright are valid only if "in writing"); *Colowyo Coal Co. v. City of Colo. Springs*, 879 P.2d 438, 443 (Colo. App. 1994) ("In order to accomplish the substitution of a new contract for an existing contract, the pre-existing obligation must be extinguished; mere modification of certain contract terms does not suffice."). Moreover, declarations filed during litigation are insufficient to create a disputed issue of fact to the extent they are conclusory and self-serving, *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1244 (10th Cir. 2010), or create a sham issue of fact. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001); *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) ("courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue"). Here it appears that the declarations were prepared entirely by counsel[14] and signed by the photographers after the Court ruled on Pearson's motion to dismiss on the issue of standing – roughly 22 months into this litigation. Thus, the declarations upon which Viesti relies bear the hallmarks of litigation. *See Minden Pictures*, 929 F. Supp. 2d at

---

[14]For example, Robert Winslow testified as follows about his own declaration:

Q       How was this declaration prepared?
A       I have no idea.
Q       Did you provide any input into this declaration?
A       No.

                                    *       *       *

Q       Did you have any discussions with Mr. Viesti about this
        declaration?
A       I don't recall.
Q       Do you recall whether you have any discussions with anyone else
        regarding this declaration?
A       No.

Docket No. 134-5 at 4, p. 65:3-6, 11-16.

969 (finding declarations intended to "backdate the contracts for 123 of the copyrighted photographs" were "tainted by the influence of litigation" and did not show "any intent to transfer any *specific* legal (or beneficial) ownership").  Viesti does not produce evidence of the parties' contemporaneous "conduct, their oral statements[, or] other evidence illuminating the circumstances surrounding" the execution or alleged modification of the First Assignments in support of the declarations' after-the-fact claims that the First Assignment applied to the Pearson Photographs.  *See I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986).

Even assuming that the First Assignments applied to the Pearson Photographs, the Court does not construe the First Assignments as transferring to Viesti legal or beneficial ownership.  The First Assignments purport to grant Viesti "copyrights and complete legal title," but are silent as to any compensation or royalties the photographer will receive for such an assignment.  *Minden Pictures*, 929 F. Supp. 2d at 968-69 (interpreting similar language and finding "the sole function of the copyright assignment is to grant an exclusive license to bring suit and divvy up any returns; there is no right to participate in any royalties apart from the litigation").  The reassignment provision also indicates that the assignment is solely for the purpose of bringing suit.  If the parties genuinely intended to transfer complete ownership, then Viesti would retain that ownership "in perpetuity if it failed to bring suit."  *See id.*  Such an interpretation is not a reasonable one.  *See John Wiley & Sons, Inc. v. DRK Photo*, 2014 WL 684829, at *13-14 (S.D.N.Y. Feb. 21, 2014) (interpreting similar language and finding that litigation-related durational language weighed against interpreting agreement as transferring co-

ownership).[15]

Although the Court perceives no ambiguity in the First Assignments, Viesti argues that the Court should again consider the declarations, which are extrinsic evidence, when determining the effect of the First Assignments.  The declarations state: "My intention throughout all my dealings with Viesti . . . was and is to transfer the necessary copyrights and claims to Viesti, give Viesti licensing rights . . . , and give Viesti legal standing to bring copyright infringement claims."  Docket No. 109-13 at 2, ¶ 8.  The declarations do not indicate an intent to assign a specific exclusive right, provide for the distribution of royalties or other compensation, or place a duration on the assignment unrelated to litigation.  *See, e.g.*, Docket No. 109-13 at 2, ¶¶ 8-9.[16]  The declarations do not evince any intent on the part of the photographers to assign Viesti any interest beyond what might be necessary to bring a claim.  Mr. Viesti also testified of the First Assignments: "I think we just wanted to have the formula to give us the legal standing for these individual photographers in the case at the time."  Docket No. 100-3 at 7, p. 248:17-19.  In light of this extrinsic evidence, the Court finds Viesti's argument unpersuasive.  *See John Wiley*, 2014 WL 684829, at *15 (finding assignment agreement impermissibly conferred only the bare right to sue based upon evidence that plaintiff assured photographers that the sole purpose for entering into the agreements was to allow plaintiff to "bring suit on the photographers' behalf").

---

[15]As noted above, the First Assignment purportedly applicable to Mr. Viesti's photographs did not contain a reassignment provision.

[16]Mr. Viesti's declaration does not reference reassignment.  *See* Docket No. 109-8 at 2-3.

Viesti argues that "the photographers' declarations filed in opposition to Pearson's motion unquestionably qualify as memoranda of transfer pursuant to 17 U.S.C. § 204" and thereby effectuate transfer of ownership in the Pearson Photographs to Viesti.  Docket No. 109 at 18 n.75.  Viesti cites *Eden Toys*, 697 F.2d at 36, for the proposition that § 204(a) requirements can be satisfied by a later execution of a writing that confirms the prior agreement.  "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a).  However, the language contained in the declarations cannot be interpreted as conveying legal or beneficial ownership of an exclusive right regardless of whether it is viewed as evidence of the existence of an agreement or as a fully executed written agreement.  Moreover, even assuming that the declarations satisfied § 204(a), Viesti must show it has standing pursuant to § 501(b), and "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989); *accord Lujan*, 504 U.S. at 598 n.4 (1992).  While it may be permissible to amend a defective allegation of jurisdiction, a party cannot amend defective jurisdictional facts as Viesti attempts to do here.  *See Newman-Green*, 490 U.S. at 832 (interpreting 28 U.S.C. § 1653).[17]

---

[17]Viesti cites to *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428-29 (9th Cir. 1996), for the proposition that "under some circumstances a prior oral grant that is confirmed by a later writing becomes valid as of the time of the oral grant, even if the writing is subsequent to the initiation of litigation on the copyright infringement." However, *Magnuson* is distinguishable.  Unlike the instant case, the trial court found that a proper transfer of copyright ownership took place.  *Id.*  The Ninth Circuit did not

The Court finds that the First Assignments fail to confer on Viesti legal or beneficial ownership of an exclusive right.[18]

### 2.  Agency Agreements

Viesti argues that the Agency Agreements transferred "beneficial co-ownership of exclusive rights to Viesti."  Docket No. 109 at 14.  Although the agreement's title – "Photographers Non-Exclusive Agency Agreement" – appears to indicate a contrary intent, the Court will consider the agreement's substance, and not simply its label.  *See HyperQuest*, 632 F.3d at 383.  The Agency Agreements state, in relevant part:

> I, the undersigned certify and warrant that I am the sole and exclusive owner of all negatives, prints, positives, original color transparencies, duplicates, stories, motion picture films, text information, and other photographic materials delivered to you, now and in the future.  I appoint you as an non-exclusive Agent and representative in respect of the leasing and sale of said materials throughout the world.  All negotiations shall be at your discretion without prior consultation with me, except when outright purchase of originals is to be negotiated.

Docket No. 109-3 at 5, ¶ 1.

The Court cannot accept Viesti's characterization of the Agency Agreements as granting "co-ownership."  First, the term "co-owner" does not appear in the agreements.  Second, the plain meaning of the agreements does not purport to convey to Viesti any ownership interest in a copyright.  Rather, the agreements' first paragraph contains the

---

disturb the trial court's findings, but also noted that the subsequent written transfer of copyright ownership was between two companies owned by the same person – effectively eliminating the possibility that the transferor would be harmed by a fraudulent transfer.  *Id.*

[18]Because the photographers' declarations are insufficient to convey to Viesti the exclusive rights necessary to create standing to bring this action, the Court need not decide Pearson's motion to strike the photographers' declarations [Docket No. 133].

only reference to ownership and clearly states that sole and exclusive ownership in the images is vested in the photographer.[19]

Viesti argues that, because the agreements grant it a percentage of "the total sum billed and collected by [Viesti]," it "'stand[s] to benefit from the legal dissemination of copyrighted material'" and therefore Viesti is a beneficial owner.  Docket No. 58 at 10 (quoting *Righthaven LLC v. Wolf*, 813 F. Supp. 2d 1265, 1271-72 (D. Colo. 2011)).  The Court declines to interpret the term "beneficial owner" so broadly.  Legislative history indicates that a "'beneficial owner' for this purpose would include, for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees."  H.R. Rep. No. 94-1476, at 159 (1976).  While beneficial ownership is not necessarily "restricted to those in a copyright's legal chain of title," *Moran*, 827 F.2d at 182, a beneficial owner's economic interests, which give rise to standing, are "derived from *the use of the copyright by its legal owner*."  *Fantasy, Inc. v. Fogerty*, 654 F. Supp. 1129, 1131 (N.D. Cal. 1987) (emphasis original).  Viesti has no claim, under the Agency Agreements, to royalties from the photographers' use of the copyrights.  Because Viesti's economic interests are derived solely from its own use of the copyright and not from the use of the copyright by its legal owners, the photographers, Viesti is not a beneficial owner pursuant to § 501(b).  Viesti does not reconcile its position with the well-settled rule that nonexclusive licensees lack standing

---

[19]In some instances, a party holding an exclusive license has standing to pursue a copyright infringement claim.  *Cf. HyperQuest*, 632 F.3d at 382; *Granite Music Corp.*, 786 F. Supp. 2d at 724.  However, Viesti "does not contend that it has exclusive *licenses*" to the Pearson Photographs by virtue of the Agency Agreements,  Docket No. 109 at 16, and the Court finds no basis upon which to conclude that the Agency Agreements convey to Viesti an exclusive license to the Pearson Photographs.

to bring an action and cites no authority to support its claim that a nonexclusive license holder qualifies as a beneficial owner simply because it stands to benefit generally from its own exploitation of the copyright. *Cf. HyperQuest*, 632 F.3d at 382 ("a person holding a non-exclusive license is not entitled to complain about any alleged infringement of the copyright); *Granite Music Corp.*, 786 F. Supp. 2d at 724 (finding nonexclusive right to license insufficient to create standing).

Finally, the Agency Agreements provide that: "In the event of . . . the unauthorized use of original color transparencies, negatives, prints, or motion picture films by your client, I give you full and complete authority to make claims or institute suit, in your name if necessary, without further permission from me."  Docket No. 100-2 at 8.  To the extent Viesti argues that this language transfers an exclusive ownership interest in the right to bring suit against Pearson, the Court disagrees.  First, the right to bring suit is not an exclusive right set forth in § 106 and, as such, is insufficient to provide standing.  *See Silvers*, 402 F.3d at 884.  Second, Viesti's right to bring suit is non-exclusive because it is limited to only those infringements committed by Viesti's clients – the photographers retain the right to prosecute all other infringements, which is inconsistent with Viesti's co-owner theory.  Accordingly, the Court finds that the Agency Agreement does not transfer to Viesti legal or beneficial ownership of an exclusive right.

### 3. Spreadsheets

Viesti claims that emails and spreadsheets, sent prior to this litigation on behalf of Mr. Cox, Bryan and Cherry Alexander, and Trip to Viesti, functioned as an assignment of copyrights to the Pearson Photographs.  Docket No. 109 at 8-11, ¶¶ 10,

15, 21.[20]  This argument is problematic on many levels.  First, Viesti did not attach the spreadsheets and emails it references to its response brief and defense counsel avers that, during discovery, Viesti initially withheld the emails and spreadsheets as privileged.  Docket No. 134-1 at 2-3, ¶¶ 8, 10-11.  Second, Viesti did not raise this argument in opposition to Pearson's motion to dismiss for lack of standing despite the spreadsheet now being claimed as a source of its standing.  *See* Docket No. 71.  Third, the spreadsheets and emails bear no indicia of a transfer of copyrights.  On December 3, 2010, "Jill" sent Viesti an email stating: "here is our finalized Pearson spreadsheet from Daniel J. Cox/Natural Exposures.  Please let me know if you need invoices at some point in time."  Docket No. 134-7 at 2.  On January 17, 2011, Mr. Turner sent Viesti an email on behalf of Trip stating, in relevant part, "I am attaching the Pearson spreadsheet with images added.  If you have any questions, let me know.  I will send you the US photographer details once I have 'first published' dates."  Docket No. 134-11 at 2.[21]  On January 19, 2011, Cherry Alexander sent Viesti an email stating, in

---

[20]The record does not indicate that any of the Exhibit A Photographers sent Viesti a spreadsheet.

[21]As noted above, Viesti fails to explain how and when Trip acquired the copyrights to the photographs listed in Exhibit D to the Second Amended Complaint. Mr. Viesti's "understanding that . . . the photographers who authored the photographs identified in Exhibit D" transferred legal or beneficial ownership to Trip is insufficient. Docket No. 109-1 at 5, ¶ 18.  Mr. Viesti's statement is likely inadmissible hearsay and, moreover, Viesti fails to explain how the individual photographers' transfers to Trip are within Mr. Viesti's personal knowledge.  Viesti also fails to produce any written agreements between individual photographers and Trip.  With the exception of photographs authored by Mr. Turner and Ms. Rogers, Mr. Turner fails to explain how he acquired the rights to the works of the photographers listed in Exhibit D.  *See* Docket No. 96-17 at 2-4.  Thus, with respect to many of the photographs listed in Exhibit D, Viesti fails to show that Trip possessed any legal or beneficial ownership or other interest to transfer to Viesti.

relevant part, "I hope this isn't too large for your email, if it is we can ftp it for you to collect.  Let me know if there are any problems."  Docket No. 134-10 at 2.  The three spreadsheets contain similar information, listing photographs by image ID, photographer, and Pearson license terms.  Docket Nos. 134-7, 134-10, 134-11. Nothing in the emails or spreadsheets evinces an intent by Mr. Cox, Cherry Alexander, or Trip to transfer or assign to Viesti legal or beneficial ownership in the Pearson Photographs.

Moreover, the emails and spreadsheets fail to satisfy the Copyright Act's writing requirement for transfers of ownership.  *See* 17 U.S.C. § 204(a).  A writing purporting to transfer copyright ownership "must evidence the transfer with reasonable clarity." *Weinstein Co. v. Smokewood Entm't Grp., LLC*, 664 F. Supp. 2d 332, 340 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 2014 WL 295854, at *9 (N.D. Cal. Jan. 27, 2014) ("a transfer of copyright ownership must be express and clear"); *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 928 (9th Cir. 1999) (holding faxes between the parties discussing terms insufficient to satisfy § 204(a)).[22]  Although Viesti claims that the

---

[22]The purpose of § 204(a) is to protect the creator of a work from inadvertently transferring an interest in a copyright.  *Weinstein Co.*, 664 F. Supp. 2d at 340.  Some courts hold that, where there is no disagreement between the owner and licensee, it is inequitable to allow a third party to invoke § 204(a) against the licensee.  *See, e.g.*, *Eden Toys*, 697 F.2d at 36.  Although the concern of inadvertent transfer is not present in this case, Congress did not expressly limit the application of § 204(a) to disputes between the copyright owner and the transferee.  Thus, § 204(a) guides the interpretation of the agreements at issue in this case.  *See, e.g.*, *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 2014 WL 295854, at *9 (N.D. Cal. Jan. 27, 2014) ("The Court's conclusion that the agency agreements do not convey ownership is underscored by the fact that a transfer of copyright ownership must be express and clear." (citing *Weinstein Co.*, 664 F. Supp. 2d at 338)).

purpose of the spreadsheets was to transfer copyright ownership, the emails and spreadsheets themselves do not reference any other agreements and provide no suggestion that the transfer of copyright ownership was at issue or in any way contemplated by the parties. *See Radio Television*, 183 F.3d at 928.

In arguing that the spreadsheets accomplished a transfer, Viesti cites to declarations by Mr. Cox, Bryan and Cherry Alexander, and Trip, which state: "It was my intent and understanding that by providing the Spreadsheet to Viesti, I was assigning to Viesti copyrights and claims in the Pearson Photographs, and including them in the Agency Agreement." Docket No. 109-15 at 2, ¶ 8; Docket No. 109-16 at 2, ¶ 7; Docket No. 109-17 at 2, ¶ 8; Docket No. 109-18 at 2, ¶ 7; Docket No. 109-19 at 2, ¶ 8. As noted above, to the extent such declarations are conclusory, self-serving, and "tainted by the influence of litigation," they are insufficient to create a disputed issue of fact as to the effect of the spreadsheets. *See Minden Pictures*, 929 F. Supp. 2d at 969. Moreover, the declarations do not indicate an intent to assign a specific exclusive right, provide for the distribution of royalties or other compensation, or place a duration on the assignment unrelated to litigation. *See, e.g.*, Docket No. 109-15 at 2-3, ¶¶ 8-9.[23] The declarations do not evince any intent on the part of the photographers to assign Viesti an interest beyond what might be necessary to bring a claim. To the extent that the

---

[23]The declarations' final paragraph states: "If any provision of a previous assignment or agreement is deemed to be inconsistent with Viesti's standing to bring these Pearson claims, such provision is void and shall have no effect." *See, e.g.*, 109-13 at 2-3, ¶ 9. This language does not aid Viesti's argument. The Court is under no obligation to reshape the parties' contracts. *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1171 (9th Cir. 2013). "[T]he parties' intended result was invalid" and reforming the agreements "in light of that intent could not have saved [them]." *Id.*

declarations state that spreadsheet photos are subject to the Agency Agreement, for the above-stated reasons, the Agency Agreement does not confer upon Viesti legal or beneficial ownership.  Finally, as discussed below, neither the Addendum nor the Second Assignment transfers to Viesti the necessary rights and neither agreement was in existence when the spreadsheets were sent in December 2010 and January 2011. The Court finds that the emails and spreadsheets did not transfer from Mr. Cox, Bryan and Cherry Alexander, or Trip to Viesti any legal or beneficial ownership of an exclusive right.

### 4. Addenda and Third Assignments

Viesti claims that defects in standing can be cured after the commencement of litigation.  Docket No. 109 at 18.  Viesti argues that, therefore, the Addenda and Third Assignments serve to clarify any earlier assignments and cure any defects in Viesti's standing to bring claims related to the Pearson Photographs.  *Id.*  As noted earlier, federal jurisdiction is determined based on facts as they existed at the time the complaint was filed.  *Newman-Green*, 490 U.S. at 830.  A party cannot attempt to amend defective jurisdictional facts once litigation has commenced.  *See id.* at 832. Because the Addenda and Third Assignments were executed after this action was filed, they cannot be the mechanism through which Viesti acquired the necessary rights.[24]

---

[24]For the foregoing reasons, it is not necessary to reach the issue of whether, under Colorado law, the Addenda and Third Assignments properly modified any existing agreements.  *See Colo. Inv. Servs., Inc. v. Hager*, 685 P.2d 1371, 1376-77 (Colo. App. 1984) (holding that written contract can be modified by subsequent agreement).  *But see Colowyo Coal Co. v. City of Colo. Springs*, 879 P.2d 438, 443 (Colo. App. 1994) ("In order to accomplish the substitution of a new contract for an existing contract, the pre-existing obligation must be extinguished; mere modification of certain contract terms does not suffice.").

*See also Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 2013 WL 1995208, at *9

(N.D. Cal. May 13, 2013) (finding that plaintiff could not establish standing based upon

assignment executed after the commencement of litigation).  Thus, the Court need not

decide whether the language of the Addenda and Third Assignments transfers to Viesti

the necessary copyright ownership because the agreements did not transfer a legal or

beneficial ownership interest prior to the filing of this action.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 100

(public entry Docket No. 101)] is **GRANTED**.  It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 116],

Plaintiff Viesti Associates, Inc.'s Motion for Partial Summary Judgment [Docket No.

117], and Defendant's Motion to Strike Portions of Declarations Submitted in Opposition

to Motion for Summary Judgment [Docket No. 133] are **DENIED** as moot.  It is further

**ORDERED** that this case is dismissed and defendant may have its costs.


DATED March 19, 2014.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge